[Cite as *State v. Collins*, 2012-Ohio-5505.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 97898**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## BERNARD COLLINS

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-547649

**BEFORE:** Sweeney, P.J., S. Gallagher, J., and Rocco, J.

**RELEASED AND JOURNALIZED:**    November 29, 2012

**ATTORNEY   FOR APPELLANT**

Robert A. Gaffney
75 Public Square
Suite 714
Cleveland, Ohio 44113

**APPELLANT**

Bernard Collins, Pro Se
No. 621-778
Mansfield Correctional Institution
P.O. Box 788
Mansfield, Ohio 44901

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Adrienne E. Linnick
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

JAMES J. SWEENEY, P.J.:

{¶1} Defendant-appellant Bernard Collins appeals his convictions for felonious assault and aggravated assault.   For the reasons that follow, we affirm.

{¶2} At a jury trial, the following evidence was introduced.  Defendant Bernard Collins entered a lease agreement with Michael McCree.  McCree lived in a single family home but rented out multiple rooms in his home to tenants as a means of income. Collins signed a six month lease and began residing in the East Cleveland premises in January 2011.

{¶3} McCree testified that Collins's girlfriend, Theresa, was not on the lease. According to McCree, he did not mind if she stayed a few days a week but wanted to renegotiate the rental fee because she was staying there more often.   Theresa testified that she in fact lived there with Collins. Both Collins and Theresa testified that McCree wanted more money for Theresa's tenancy.   In early February, the relationship between McCree and the couple began to sour; each side offering different reasons for the dispute. McCree claimed that they were stealing his laundry detergent, the other tenant's food, and misusing or using various appliances without his permission.   Theresa and Collins acknowledged that McCree had banned them from using kitchen and household appliances but said it was because they refused a lewd request allegedly made by McCree. In any event, all parties agree that they began calling the police and lodging various complaints against one another.

{¶4} McCree admitted that he collected guns and displayed them throughout his home.   However, being a convicted felon, he could not possess firearms and testified that

all of the guns were BB guns, which he believed he was allowed to possess. Both Collins and Theresa believed they were "real guns" and had never seen McCree use them. Collins testified that McCree had threatened to shoot him.

{¶5} On February 20, 2011, McCree called police and reported that Collins had allegedly come after him with a knife. McCree claimed that Collins hit him several times in the chest, which Collins denied. McCree grabbed a hammer and Collins ran upstairs. Collins claimed he was opening hot dogs with a knife when they began to argue and McCree grabbed a hammer. Police arrived, confiscated the knife, but did not arrest or charge anyone with any offense related to this incident.

{¶6} The next morning, February 21, 2011, Theresa was using the microwave, despite knowing she did not have McCree's permission to do so. McCree testified that he came into the kitchen armed with a bat because he was still afraid from the knife incident. He saw sparks coming out of the microwave and ripped the cord out of the wall. Theresa began struggling with McCree trying to replug the cord and continue using the microwave. According to her, it was at this point that McCree went to get the bat.

{¶7} Theresa called out to Collins for help. McCree testified that he and Collins began tussling over the bat. Collins was able to gain control of the bat and began hitting McCree. McCree reports being in and out of consciousness.

{¶8} Police arrived and both Theresa and McCree received medical care. McCree sustained head injuries that required mutliple staples, he was bruised on his back and leg as well. Theresa had redness on her arm and was given a sling.

{¶9} Theresa reported to police that McCree hit her in the arm with a bat and then

Collins took the bat and hit McCree approximately three times. At trial, Theresa testified that she did not see Collins hit McCree but heard a thud and saw McCree "asleep." It is unclear whether she saw McCree hit her with the bat or if she was struck as Collins and McCree were struggling over the bat.

{¶10} Collins said he awoke to hear Theresa screaming for him. He ran downstairs and found McCree choking her in the pantry with a bat. He then saw McCree hit Theresa with the bat. Collins was trying to protect Theresa and took the bat from McCree and hit him in the head. McCree fell to the ground. Collins instructed Theresa to go upstairs and call the police, which she did. When McCree regained consciousness, he said he was going to kill them. Aware of the guns in the home and due to McCree's threats, Collins felt it was necessary to keep McCree on the ground. He claimed he was in fear of his life. When McCree tried to get up, Collins struck him in the leg with the bat. The bat broke in half at that point. Collins denies ever hitting McCree in the back.

{¶11} Police arrived and were met by Theresa, who was visibly upset. The two men were standing next to each other in the kitchen area. The officers took the bat. Both Collins and McCree were arrested as a result of this incident. Although Theresa wanted to press charges against McCree, none were pursued. Collins was charged with two counts of felonious assault.

{¶12} The matter proceeded to a jury trial. The jury received instructions on self-defense and defense of other as well as charges on inferior degree offenses, including aggravated asssault.

{¶13} The jury found defendant guilty of the inferior degree offense of aggravated assault under Count one and guilty of felonious assault under Count two. Defense

objected and asserted that the verdicts were inconsistent, which the trial court overruled.

{¶14} The State agreed that the offenses were allied and of similar import and elected to pursue sentencing on the felonious assault conviction pursuant to R.C. 2903.11(A)(2). The court imposed a two year prison sentence and ordered defendant to pay restitution. The court appointed appellate counsel who identified two potential assignments of error as follows:

ASSIGNMENT OF ERROR I:

Appellant's conviction is against the sufficiency of the evidence and should be reversed because it violates the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Constitution of the State of Ohio.

ASSIGNMENT OF ERROR II:

The guilty verdict in this case is against the manifest weight of the evidence and should be reversed because it violates the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Constitution of the State of Ohio.

{¶15} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541 (1997).

{¶16} The proper test for an appellate court reviewing a manifest weight of the evidence claim is as follows:

The appellate court sits as the "thirteenth juror" and, reviewing the entire record, weighs all the reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*Thompkins* at 387.

{¶17} Appellant's convictions were supported by sufficient evidence and were not against the manifest weight of it.

{¶18} Collins admitted that he hit McCree with a baseball bat. The evidence is undisputed that a baseball bat can be used as a deadly weapon. Collins did not deny causing serious physical harm to McCree but instead testified that he was defending Theresa and himself when he struck McCree. Collins stated that McCree threatened to kill him. Theresa indicated she heard some threats being made by McCree. McCree denied making any threats. McCree testified that he was begging Collins to just leave and he would not press charges. Collins testified that McCree made some statements to that effect but he believed this was a rouse by McCree to be able to get up and get his gun. There was evidence that McCree displayed guns that appeared to be real. McCree testified that both Collins and Theresa knew they were BB guns but they both said they did not.

{¶19} Theresa testified that at first she felt that McCree got what he deserved but later felt that Collins should have simply taken the bat away from McCree. McCree denied hitting Theresa and claimed he just armed himself with the bat because he feared Collins.

{¶20} There is testimony that Collins began striking McCree and saying "I am tired of your shit." Collins acknowledged that he was angry with the way McCree had

been treating them but insisted he was acting in self-defense on February 21, 2011.

{¶21} The record contains evidence that would support either Collins's or McCree's version of events. The jury's guilty verdicts did not create a miscarriage of justice simply because the jury resolved the conflicts in the evidence and assessed the witness's credibility in the State's favor.

{¶22} These assignments of error are overruled.

{¶23} Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
JAMES J. SWEENEY, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
KENNETH A. ROCCO, J., CONCUR